Curtis E. Allen, Esq., SBN 187748

George S. Khoury, Esq., SBN 269738 (Of Counsel)

LAW OFFICE OF CURTIS ALLEN

303 Twin Dolphin Drive, Suite 600

Redwood City, CA 94065

Mobile 650 868 6620; F 650 362 1864

Curtis@curtisallenlaw.com

Attorney for Plaintiff Giovanni Guadagnini

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

[*San Francisco*]

| | |
|---|---|
| Giovanni Guadagnini<br><br>　　　　　　Plaintiff,<br><br>　　　vs.<br><br>First Washington Realty, Inc.; Safeway; Dollar Tree; GRI Fairmont, LLC; and DOES 1 through 20, inclusive,<br><br>　　　　　　Defendants. | Case Number: Case 3:21-cv-01139<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**TITLE III OF THE AMERICANS WITH DISABILITIES ACT; CALIFORNIA UNRUH CIVIL RIGHT ACT** |

### PARTIES

1. Plaintiff Giovanni Guadagnini ("Mr. Guadagnini") is a California resident with physical disabilities which make him a qualified individual under the Americans with Disabilities Act.

2. Defendant First Washington Realty, Inc. and Defendant GRI Fairmont, LLC are each a business that jointly owns and operates the shopping plaza known as the Fairmont Shopping Center in the City of Pacifica, located at

Gateway Drive and Hickey Boulevard (hereinafter "Fairmont Shopping Center").

3. Defendant Safeway is a business that owns and operates the Safeway store located in the Fairmont Shopping Center at 709 Hickey Boulevard.

4. Defendant Dollar Tree is a business that owns and operates the Dollar Tree store located in the Fairmont Shopping Center at 787 Hickey Boulevard.

5. Pursuant to California Code of Civil Procedure § 747, Plaintiff hereby also sues Doe Defendants 1 through 20. Plaintiff is ignorant of the name of Doe Defendants 1 through 20, but believes such Defendants also contributed to the legal violations complained of herein and that Doe Defendants 1 through 20 caused Plaintiff damages and are subject to the remedies Plaintiff seeks all as set forth herein. When said Defendant(s) true name(s) is/are discovered, Plaintiff will amend the Complaint accordingly.

## JURISDICTION & VENUE

6. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (hereinafter "the Americans with Disabilities Act" or "the ADA")

7. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

8. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Mr. Guadagnini's causes of action arose in this district.

## FACTUAL ALLEGATIONS

9. The Americans with Disabilities Act was passed 30 years ago.

10. Mr. Guadagnini is and has been a resident of Daly City for over 50 years, and lives on the border between Daly City and Pacifica.

11. As set forth herein, Mr. Guadagnini is qualified as "disabled" under the ADA.

2
COMPLAINT

12. Mr. Guadagnini is substantially limited in his ability to walk and in his ability to grasp, hold, pull and/or push with his left arm.

13. Mr. Guadagnini requires a powered wheelchair for mobility.

14. For the past several years, Mr. Guadagnini has frequently shopped at and continues to shop at the Fairmont Shopping Center.

15. The Fairmont Shopping Center is located near Mr. Guadagnini's home, such that he is able to ride his powered wheelchair from his home to the Fairmont Shopping Center.

16. The Fairmont Shopping Center was significantly renovated in 2016-2017, when Safeway moved in.

17. The sidewalk entrance from Gateway Drive, nearest to Hickey Boulevard, into the Fairmont Shopping Center is blocked by a street sign pole in the center of the sidewalk, has too steep a slope, and lacks signage directing individuals to an ADA accessible entrance to the shopping center.

18. There is no sidewalk entrance from Hickey Boulevard, nor signage directing individuals to the ADA accessible entrance for the Fairmont Shopping Center.

19. Mr. Guadagnini regularly visits the RiteAid located next to Safeway and Dollar Tree at the Fairmont Shopping Center in order to purchase prescription medications and other items, and often patronizes both Safeway and Dollar Tree.

20. Defendants First Washington Realty, Inc. and GRI Fairmont, LLC jointly own the real property where RiteAid, Defendant Safeway and Defendant Dollar Tree operate.

21. Defendant First Washington Realty, Inc. and GRI Fairmont, LLC jointly lease space to Defendants Safeway and Dollar Tree.

22. During countless trips to these stores, Mr. Guadagnini has encountered architectural barriers in the form of shopping carts from Safeway and/or Dollar Tree blocking his access to the sidewalks and entry into the RiteAid, Safeway and Dollar Tree stores.

23. Mr. Guadagnini has complained to store management at Safeway and Dollar Tree regarding the shopping carts blocking his accessible pathways numerous times.

24. Despite the repeated complaints to store management, the problems with Safeway and Dollar Tree shopping carts blocking the paths of travel for Mr. Guadagnini on the Fairmont Shopping Center's sidewalks persist with alarming frequency and regularity.

25. Mr. Guadagnini has complained to the corporate offices of both Safeway and Dollar Tree, both of which have acknowledged receipt of his complaints.

26. Mr. Guadagnini spoke to Tom Kim at Dollar Tree's corporate office in or about 2019.

27. After many months of waiting for a return call from anyone connected with the Safeway at Fairmont Shopping Center, Mr. Guadagnini spoke to Jim LNU (Last Name Unknown) from Safeway's corporate office on or about January 15, 2021. Jim informed Mr. Guadagnini that he would take immediate action to remedy the problems with the shopping carts blocking access.

28. Despite the corporate entities being made aware of the shopping cart problem, the problems persist.

29. When Mr. Guadagnini's path of travel is blocked by shopping carts, he is forced to move the carts in order to patronize the businesses at the Fairmont Shopping Center.

30. Mr. Guadagnini is put at risk of physical injury due to wheelchair tipping as a result of moving the shopping carts owned by Safeway and Dollar Tree.

31. When Mr. Guadagnini is forced to move shopping carts to gain access to the accessible path of travel on the sidewalk, he suffers frustration, fear, upset, embarrassment and physical pain.

32. On occasion, other customers at the Fairmont Shopping Center have moved abandoned shopping carts for Mr. Guadagnini, which causes him frustration.

33. Once inside Safeway, Mr. Guadagnini frequently is blocked by abandoned shopping carts, as well as stock room carts, taking up the required clear space in the aisles.

34. Mr. Guadagnini suffers difficulty, frustration, pain and upset when he must move these shopping carts and stock room carts inside the stores out of the way so he can reach items

on shelves or pass down an aisle.

35. At checkout inside Safeway, Mr. Guadagnini must often plead for help from employees, and frequently needs to request manager assistance when employees refuse to assist him, with taking payment and operating the credit card machine to check out.

36. Mr. Guadagnini has difficulty entering the Dollar Tree store at the front door.

37. On more than a few occasions, Mr. Guadagnini has suffered difficulty, upset and frustration as other customers or staff were needed to help him get in the Dollar Tree door.

38. Once inside the Dollar Tree store, Mr. Guadagnini suffers frustration, upset, and embarrassment as the aisles are frequently cluttered with carts and boxes for stocking, and product displays that block the required clear space.

39. When Mr. Guadagnini complains in store to Dollar Tree employees and management, he is often embarrassed because his complaint turns into an argument and other customers can hear and see what is happening.

40. The following list of dates are recent examples of each time Mr. Guadagnini has encountered barriers at the Fairmont Shopping Plaza over approximately one month's time.

41. On or about February 8, 2021, Mr. Guadagnini's access to the accessible path of travel was blocked by a Safeway shopping cart which he was forced to move in order to use the sidewalk.

42. On or about February 8, 2021, Mr. Guadagnini's access to the accessible path of travel was blocked by a Dollar Tree shopping cart which he was forced to move in order to use the sidewalk.

43. On or about February 8, 2021, Mr. Guadagnini's access to the goods and services within the Safeway store was blocked by Safeway shopping and stock carts.

44. On or about February 8, 2021, Mr. Guadagnini's access to the goods and services within the Dollar Tree store was blocked by Dollar Tree's product displays and boxes taking up the required clear spaces.

45. On or about February 5, 2021, Mr. Guadagnini's access to the accessible path of

travel to the sidewalk from the Fairmont Shopping Plaza was blocked by a tenant, Curry and Kabab, of the Fairmont Shopping Center unloading a pick up truck while the pick up truck was parked on the sidewalk blocking the only accessible route.

46. On or about February 5, 2021, Mr. Guadagnini's access to the accessible path of travel was blocked by a Safeway shopping cart which he was forced to move in order to use the sidewalk.

47. On or about February 3, 2021, Mr. Guadagnini's access to the accessible path of travel was blocked by a Safeway shopping cart which he was forced to move in order to use the sidewalk.

48. On or about February 3, 2021, Mr. Guadagnini's access to the accessible path of travel was blocked by a Dollar Tree shopping cart which he was forced to move in order to use the sidewalk.

49. On or about January 29, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

50. On or about January 22, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

51. On or about January 22, 2021, Mr. Guadagnini's path of travel was blocked by a Dollar Tree shopping cart which he was forced to move.

52. On or about January 21, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

53. On or about January 15, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

54. On or about January 11, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

55. On or about January 6, 2021, Mr. Guadagnini's path of travel was blocked by a Safeway shopping cart which he was forced to move.

56. On numerous occasions, Mr. Guadagnini's accessible path of travel has been

blocked by laundry carts from Launderland, a tenant at Fairmont Shopping Center, that are abandoned on the sidewalk.

57. Mr. Guadagnini estimates that he has encountered shopping carts blocking his access, and other physical barriers, at the Fairmont Shopping Center, Safeway, and Dollar Tree, approximately five times a month since 2017 through August 1, 2022.

58. Mr. Guadagnini will continue to shop at the Fairmont Shopping Center and will continue to face constant discrimination until defendants are made to ensure that shopping carts do not block the accessible pathways.

59. On a few occasions, Mr. Guadagnini has been deterred from stopping at Safeway and/or Dollar Tree after shopping at RiteAid due to encountering architectural barriers when exiting the store.

60. When Mr. Guadagnini complains about blocked accessible pathways and clear space in the Dollar Tree store, he frequently faces retaliation from the management for speaking up about his civil rights.

61. When Mr. Guadagnini reports the violations of his civil rights to Dollar Tree, management loudly argues with him, which leads to Mr. Guadagnini being embarrassed due to other customers being able to hear what is happening.

62. As a result of the retaliation, Plaintiff suffered fear, embarrassment, scorn, and humiliation.

63. If the barriers are not removed, Mr. Guadagnini will continue to face unlawful and discriminatory barriers.

64. On information and belief, Mr. Guadagnini alleges that policies exist at both Safeway and Dollar Tree requiring employees to retrieve carts and remove carts from blocking accessible paths, yet the problem is pervasive and persistent.

65. On information and belief, Mr. Guadagnini alleges that policies exist at both Safeway and Dollar Tree requiring employees to not block a shopping aisle's required clear accessible space/paths with stock carts and product displays, yet the problem is pervasive and

persistent to August 1, 2022.

66. Given the obvious and blatant nature of the barriers and violations alleged herein, Mr. Guadagnini alleges, on information and belief, that there are other violations and barriers that relate to his disability. Mr. Guadagnini will amend the complaint, to provide proper notice regarding the scope of this lawsuit, after discovery. Mr. Guadagnini seeks to have all barriers related to his disability remedied. See *Doran* v. *7-11,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

## FIRST CAUSE OF ACTION

## UNDERLYING VIOLATION OF

## THE AMERICANS WITH DISABILITIES ACT OF 1990

(On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

67. Mr. Guadagnini re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

68. The ADA states that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 USC sec. 12182

69. Under the ADA, it is an act of discrimination for an owner or operator of a public accommodation facility to fail to remove architectural barriers to/from a public accommodation when it is readily achievable to do so.

70. Here, the failure to ensure that the accessible facilities and features were available and ready to be used by Mr. Guadagnini violated and continues to violate the law.

71. Defendants discriminated and continue to discriminate against plaintiff by denying full access to the services, programs, and/or activities by failing to make its facilities readily

accessible as required by the ADA.

72. Defendants failures as set forth above directly and proximately caused damages to Mr. Guadagnini as set forth herein, which includes but is not limited to difficulty, discomfort, fear of injury, embarrassment and/or actual injury for Mr. Guadagnini,.

73. Wherefor, Mr. Guadagnini requests relief as set forth below.

## SECOND CAUSE OF ACTION

## UNDERLYING VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

(On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code§ 51-53.)

74. Mr. Guadagnini repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

75. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

76. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code,§ 5l(f).

77. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding in, or inciting the denial of, Mr. Guadagnini's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

78. Because the violation of the Unruh Civil Rights Act directly and proximately resulted in damages to Mr. Guadagnini which includes but is not limited to difficulty, discomfort, fear of injury, and/or embarrassment, and actual injury, on numerous occasions, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code§ 55.56(a)-(c).)

79. Wherefor, Mr. Guadagnini requests relief as set forth below.

## THIRD CAUSE OF ACTION

**RETALIATORY VIOLATION OF**

**THE AMERICANS WITH DISABILITIES ACT**

(On behalf of Plaintiff and against Defendant Dollar Tree.) (42 U.S.C. section 12203.)

80. Mr. Guadagnini repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

81. As a result of Plaintiff asserting his civil rights under the ADA to store management, plaintiff faced retaliation in violation of Sec. 12203 of the ADA.

82. As a result of the retaliation, Plaintiff suffered fear, embarrassment, scorn, and humiliation.

83. Wherefor, Mr. Guadagnini requests relief as set forth below.

**FOURTH CAUSE OF ACTION**

**RETALIATORY VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

(On behalf of Plaintiff and against Defendant Dollar Tree.) (Cal. Civ. Code§ 51-53.)

84. Mr. Guadagnini repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

85. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

86. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code,§ 5l(f).

87. Defendant's acts of retaliation, as herein alleged, have violated the Unruh Act.

88. Because the violation of the Unruh Civil Rights Act directly and proximately resulted in damages to Mr. Guadagnini which includes but is not limited to difficulty, discomfort, fear of injury, and/or embarrassment, on numerous occasions, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code§ 55.56(a)-(c).)

89. Wherefor, Mr. Guadagnini requests relief as set forth below.

**PRAYER FOR RELIEF**

Wherefore, Mr. Guadagnini prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.

2. Damages under the Unruh Civil Rights Act for violation of the Americans with Disabilities Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205 et seq. and Cal. Civ. Code § 52 et seq..

4. Any and all other relief the Court deems necessary.

Date February 11, 2021                     Law Office of Curtis Allen

/s/ *Curtis Allen*

_____
Curtis E. Allen, Esq. Attorney for
Plaintiff Giovanni Guadagnini